**9**
SCHEER LAW GROUP, LLP
JOSHUA L. SCHEER #242722
REILLY D. WILKINSON #250086
85 Argonaut, Suite 202
Aliso Viejo, CA 92656
Telephone: (949) 263-8757
Facsimile: (949) 308-7373
jscheer@scheerlawgroup.com
GM.300-002S

Attorneys for Secured Creditor

UNITED STATES BANKRUPTCY COURT FOR

THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Bk. No. 24-24120 |
| Kristina Lynn Fluetsch | Chapter 13 |
| Debtor. | DCN JLS-1 |
| | **OBJECTIONS TO CONFIRMATION OF PLAN** |
| | Hearing – Confirmation Hearing<br>Date:  November 19, 2024<br>Time:  9:00 AM<br>Place: Courtroom 28, 7th Floor<br>501 I Street, Sacramento, CA |

Michael Gorenberg, an unmarried man, $200,000.00/$690,000.00ths; Barry L. Chin and

Susan Y. Chin, Trustees, or their successors in trust, under the Chin Living Trust, dated April 13,

2001, and any amendments thereto, $150,000.00/$690,000.00ths; Tuyen V. Quoc and Myung S.

Lee, Trustees of the Quoc-Lee Family Trust U/D/T dated March 3 1, 1999,

$150,000.00/$690,000.00ths; Siva Uppalapati and Padma Uppalapati, as CO-Trustees of the

Uppasana22 Family Trust, U/A dated November 8, 2022, $140,000.00/$690,000.00ths;  Chin-

Chai Low and Lai-Fen Wong, Trustees of the Low/ Wong Family Trust dated September 9,

1999, and any amendments thereto,  $50,000.00/$690,000.00ths, their successors and/or

1

assignees (collectively, "**Creditor**"), secured creditor of the above named Debtor, hereby

submits these Objections to the Debtor's Chapter 13 Plan ("**Plan**"). These Objections are based

on the pleadings and records on file in this matter, the Declaration of Chin-Chai Low

("**Creditor's Declaration**") and the following memorandum. Creditor also requests that the

Court take Judicial Notice of certain documents of public record and on file with this Court in

accordance with Federal Rule of Evidence 201, including, but not limited to Debtor's Chapter 13

Plan and Schedules.

## I.      INTRODUCTION

Debtor is a California licensed attorney. In December 2022, Debtor took out a short term

(2 year) business purpose loan from Creditor in the principal amount of $690,000 in order to,

according to Debtor, open up a new law office. Creditor's Note is secured by a second deed of

trust encumbering the real property at 2722 Latham Drive, Sacramento, CA 95864 (the

"**Property**"). Pursuant to Debtor's schedules, the Property is her principal residence. However,

she started her own law practice out of the Property and continues to operate it.

Immediately after obtaining the loan from Creditor, Debtor took out a separate junior

loan with Robert and Judy Dronberger ("**Dronberger**") in the amount of $400,000. However,

despite receiving these funds from Creditor (and presumably Dronberger), she still fell behind on

monthly payments to Creditor. This Bankruptcy was filed immediately prior to Creditor's

scheduled foreclosure sale.

While Debtor filed a Plan in the Bankruptcy to avoid dismissal, it is not in compliance

with the Bankruptcy Code. For example, Debtor listed Creditor as a Class 3.2 claim, to be

"valued", but provides no explanation as to why or how. Creditor's claim is fully secured by the

Property. It is also secured by the Debtor's principal residence. The loan matures in

approximately two (2) months. The Debtor has proposed a Plan that appears to provide for

ongoing payments of $6,900, *without accounting for the loan maturity at all.* This is not proper

under the Code and should not be allowed.

Even if the Debtor was legally able to propose monthly payments and a cure of arrears

over a 5 year Plan, her income is *admittedly* entirely inadequate. The information in the

Schedules show a complete lack of disposable income. She is also not eligible for Chapter 13. The Plan is not feasible, it is unfair and inequitable, and also not in accordance with the requirements of the Code. The Plan and this Bankruptcy have been filed in bad faith and the case should be dismissed.

*First*, the Plan itself is an impermissible modification of Secured Creditor's claim. Despite Debtor claiming that she lives on the Property as her principal residence, she ignores the maturity of the Loan and instead proposes to pay the Loan back with normal monthly payments. This is improper.

*Second*, even if the Debtor were able to provide this inequitable treatment, her disposable income is not sufficient to fund a Plan. She alleges *negative* disposable income of ($11,602). While she claims in her Schedules that she "expects to grow [her] law firm", this is pure speculation and no support for this is offered. A reorganization is simply not possible with her finances.

*Third*, she claims to intend to "value" the Claim in the Plan, yet offers no explanation and does not allege that the Claim is undersecured. There does not appear to be a good faith basis for any valuation.

*Finally*, the Debtor is admittedly far over the debt limit for Chapter 13. Her secured debt equals $1,927,034.46, according to her own Schedule D. This is well over the limit for Chapter 13 filings.

The Bankruptcy and Plan are filed in bad faith. The lack of disclosure, impermissible modification, inadequate income, ineligibility, and inability to provide a confirmable Plan show a lack of good faith in this filing. The Plan is infeasible in violation of 11 U.S.C. § 1325(a)(6), in violation of 11 U.S.C. §1322(b)(2) as an impermissible modification and has been proposed in bad faith in violation of 11 U.S.C. § 1325(a)(3) and (a)(7). Plan confirmation should be denied and this case should be dismissed with prejudice.

## II.      FACTS

1.      Creditor is the current payee of a Promissory Note dated December 14, 2022 in the principal amount of $690,000 (the **"Note"**) secured by a second Deed of Trust of same date,

1  which bears interest as specified therein.  The indebtedness evidenced by the Note is secured by

2  a Deed of Trust executed and recorded in Sacramento County and which encumbers the

3  Property, the Debtor's residence. Creditor's loan matures on January 1, 2025, in approximately

4  two (2) months.[1]

5          2.      The Loan was taken out as a business purpose loan for the purposes of starting the

6  Debtor's new law firm, specifically opening up a second firm.[2] According to Debtor's Schedules,

7  at the same time, she also took out a loan with Dronberger in the amount of $400,000, which was

8  not disclosed to Creditor.[3]

9          3.      On September 16, 2024, Debtor filed a Petition under Chapter 13 of the

10  Bankruptcy Code, No. 24-24120. Debtor filed a Chapter 13 Plan on October 1, 2024 that

11  proposes plan payments to the Trustee in the amount of $2,000 per month for 60 months.[4] Debtor

12  lists Creditor's claim in Class 3.2, providing for ongoing payments to be made on Creditor's

13  claim by making monthly payments of $6,900 each.[5]

14          4.      According to the Plan, Class 3.2 claims are to be valued with the payment of fully

15  secured claims and modification of undersecured claims. However, Debtor does not allege that

16  the claims are undersecured. Instead, in her Schedules she claims that she "thinks that [the] loan

17  is invalid" and provides no further explanation.[6]

18          5.      Debtor owes approximately $64,892.97 in *pre-petition* arrears ("**Arrears**") to

19  Creditor. More importantly, the Note matures on January 1, 2025 and will become fully due and

20  payable at that time. The total claim as of the date of bankruptcy filing is approximately

21  $758,821.46.  Interest, fees, and costs continue to accrue since the filing in accordance with the

22  terms of the Note and Deed of Trust. Creditor will provide more detail as to the claim amount in

23  its proof of claim to be filed prior to the deadline.[7]

24

25

---

26  [1] *See* Creditor's Declaration, Par. 3 and 4.
    [2] *See* Creditor's Declaration, Par. 6.
27  [3] *See* Schedules D.
    [4] *See* Plan, Page 1.
28  [5] *See* Plan, Page 3.
    [6] *See* Schedule J.
    [7] *See* Creditor's Declaration, Par. 6 and 7.

1      6.      According to Debtor's Schedules, Debtor has no disposable income available

2   towards a Chapter 13 Plan payment. In Schedule I, Debtor declares that her monthly income is

3   $11,002.[8] In Schedule J, the Debtor declares that her monthly expenses are $22,604, leaving the

4   Debtor with a *negative* disposable income in the amount of $(11,602).[9] The Plan is funded

5   primarily from settlement payments Debtor claims to be receiving from Arsenal Funding and

6   Cloudfund totaling $5,500.[10]

7      7.      Debtor lists secured debt in her Schedules totaling $1,927,034.46.[11]

8                     **III.     OBJECTION**

9   **A. Infeasible Plan in Violation of 11 U.S.C. § 1325(a)(6)**

10      Given the claim of Creditor which must be paid in full under the Plan, with interest,

11   Debtor's Plan is infeasible and in violation of 11 U.S.C. § 1325(a)(6).

12      1.   Debtor Fails to Correctly Provide for Creditor's Claim in the Plan

13      Creditor's claim fully matures in two (2) months.  However, the Debtor has proposed to

14   maintain ongoing payments (presumably the pre-maturity payments of $6,900) and to pay

15   nothing on arrears, instead of its entire claim of $758,821.46 as required.  Debtor provides no

16   explanation for the failure to include the entire claim despite clear knowledge of the balloon

17   payment coming due in January 2025 (*see* infra).  Even if the loan matured after the Plan (it does

18   not) the Debtor entirely omits the pre-petition Arrears of $64,892.97.  The failure to properly list

19   Creditor's claim, either the Arrears or the maturity, makes the Plan infeasible as it would result

20   in a higher monthly payment which Debtor admittedly cannot afford.

21      2.   Debtor Lacks Income to Fund the Plan

22      Debtor's own Schedules clearly show that she cannot make the payments required to pay

23   Creditor in full *even as proposed*.  Debtor's Schedules show disposable income of negative

24   ($11,602).  This is not enough to pay the payments under the proposed Plan, let alone the actual

25   claim of Creditor which matures in 2025. The Plan *as proposed* is infeasible on its face.  Debtor

26

27   _____
     [8] *See* Schedule I.
28   [9] *See* Schedule J.
     [10]  *See* Plan, Page 7.
     [11]  *See* Schedule D.

1   claims that she expects her income to increase as her business grows, however there is no

2   certainty that the increased income will materialize. Confirmation of the Plan is simply not

3   possible with Debtor's income and expenses in light of Debtor's stated income and the fact that

4   Creditor's claim was not correctly listed so an increased payment amount would be required.

5       **B. Impermissible Modification in Violation of 11 U.S.C. § 1332(b)(2) and Non-
            Acceptance by Creditor of treatment in Violation of 11 U.S.C. § 1325(a)(5)**

6

7       Debtor cannot modify Secured Creditor's claim over its objections as detailed herein.  As

8   Creditor's loan matures in two (2) months, its claim is significantly higher than the amount

9   provided in the Plan, further rendering the Plan infeasible.  The failure to pay Creditor's claim in

10  full and the attempt to modify Creditor's claim is in violation of 11 U.S.C. § 1322(b)(2) and §

11  1325(a)(5) as Creditor has not accepted this treatment.

12      Creditor's Note is set to mature January 1, 2025. Debtor has proposed a 60-month plan

13  that classifies the obligation as a class 3.2 claim and that requests that the claim be valued.

14  However, despite the fact that the Note will mature imminently, the Debtor is seeking to make

15  the pre-maturity payments of $6,900 over the 60 months of the Plan with no payments on

16  Arrears. Creditor objects to any plan for repayment that extends the maturity date on its loan,

17  pursuant to 11 U.S.C. §1322(b)(2).  The Property is admittedly Debtor's primary residence and

18  the loan cannot be modified as a result.

19      As Debtor's intent is to maintain the Property for her business, the only option would be

20  to attempt to pay the claim over time in a Plan.  However, this would require the full payment of

21  the claim in equal monthly payments at market interest.  *See In re James Jones*, 188 B.R. 281

22  (Bankr. D. OR. 1995). *See also In re Barnes*, 32 F.3d (9th Cir. 1994) (requiring payment of the

23  claim over the life of the plan in accordance with 11 U.S.C. § 1325(a)(5)(B)(ii))(emphasis

24  added); *In re Bagne*, 219 B.R. 272, 277 (Bankr. E.D. Cal. 1998); In re Reeves, 164 B.R. 766, 768

25  (Bankr. Fed. App. 1994); *In re Harlan*, 783 F.2d 839, 840 (9th Cir. 1986) (postponing payment

26  of a debt beyond the original date contemplated by the parties is a modification of the Secured

27  Creditor's rights and violates 11 U.S.C. § 1322(b)(2)).

28

1    Even using Debtor's own numbers *and no interest*, this would require payments of over

2  $12,647/month to pay the claim in full, which clearly cannot happen.  With required interest at

3  the contract, non-default rate of 12% (or any other rate), these payments would be impossible.

4    To the extent the Debtor asserts that the interest rate can be modified, the payments

5  would still be infeasible even at the lowest possible rate.  The current prime rate is 8%.  In *Till v.*

6  *SCS Credit Corporation*, the Supreme Court set forth a two-part "prime-plus" formula for the

7  determination of interest paid to creditors under the cram down provisions in chapter 13 plans.

8  541 U.S. 465, 478-479 (2004).  The interest rate owed to creditors under this formula is the

9  national prime rate adjusted upwards to account for risk. Id. The Supreme Court listed risk

10  factors to be evaluated for the upward adjustment of interest as (1) "the circumstances of the

11  estate," (2) "the nature of the security," and (3) "the duration and feasibility of the reorganization

12  plan." *Id.*

13    Here, the Debtor is seeking to extend a two (2) year Note that matures in Month three (3)

14  of the Bankruptcy and is already over $65,000 delinquent.  In addition, the Debtor admittedly has

15  no disposable income to fund a Plan and is relying on third party settlements and a supposed

16  business increase without any explanation or documentation.  Under the circumstances, Secured

17  Creditor would be entitled to an increased interest rate, likely 10% or 11% under the *Till*

18  analysis, or even the non-default rate of 12% under similar analysis.

19    **C.  Debtor is Not Eligible to be a Chapter 13 Debtor Under 11 U.S.C. §109(e)**

20    In order to be eligible to be a Chapter 13 Debtor, a Debtor must not have secured debt

21  exceeding $1,395,875. *See* 11 U.S.C. § 109(e).  Here, the Debtor has scheduled secured debt of

22  $1,927,034.46.  Due to the fact that the Debtor's total secured debt exceeds the statutory limit

23  proscribed in 11 U.S.C. 109(e), the Debtor is not eligible to be a Chapter 13 Debtor and this case

24  should either be converted or dismissed.

25    **D.  The Bankruptcy and the Plan Were Not Filed in Good Faith as Required by**
      **1325(a)(3) and (a)(7)**

26

27    Creditor asserts that the current bankruptcy and Plan were filed in bad faith and in

28  violation of 11 U.S.C. § 1325(a).  Pursuant to section 1325(a)(3), to be entitled to confirmation,

7

the chapter 13 plan must have been proposed in good faith and may not have been proposed by

any means forbidden by law. *8-1325 Collier on Bankruptcy* P 1325.04. Whether the Plan is in

good faith is determined by reviewing the totality of the circumstances. *In re Goeb*, 675 F.2d

1386, 1389-1390 (9th Cir. 1982). In addition to considering whether the debtors acted equitably

in proposing their Chapter 13 plan, a bankruptcy court must also take into account "whether the

debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code or

otherwise proposed his Chapter 13 plan in an inequitable manner." Id. at 1390. *Heal v.*

*Burchard*, 2010 U.S. Dist. LEXIS 107879 (N.D. Cal. Sept. 28, 2010). Also, under section

1325(a)(7), a plan can be denied confirmation if the action of the debtor in filing the bankruptcy

petition was not in good faith. This paragraph differs from section 1325(a)(3) because that

section refers to good faith proposal of a plan, rather than filing of the petition. *8-1325 Collier*

*on Bankruptcy* P 1325.08.

In this case, neither the petition nor the Plan appear to have been filed in good faith in

part due to the following:

- Creditor's Note matures within the life of the Plan but this is completely ignored;
- Even if Creditor's Note did not mature during the life of the Plan (which it does), the Debtor has no means to fund her proposed Plan based upon her own Schedules;
- The Debtor has *negative* disposable income and is aware that she has no ability to fund a plan, yet she is proceeding in this manner to stall Creditor from pursuing its rights under State law. This further shows no real intention or ability to reorganize, only to delay Creditor's rights;
- The Debtor is ineligible for Chapter 13, yet has filed with no actual intent to reorganize;
- The Debtor has listed Creditor's claim as a Class 3.2 Claim despite the fact that it is admittedly fully secured;
- The Debtor claims in her Schedules that she "thinks" the loan is invalid, but provides no explanation.

The Plan and Bankruptcy were filed in bad faith and should be dismissed.

1

## IV. CONCLUSION

2      The Plan was filed without a legitimate attempt to reorganize and is infeasible, even as

3 proposed, especially when including Creditor's actual claim as required by the Code, which

4 matures in January 2025. The Plan and Bankruptcy appear to have been filed in bad faith.

5 Wherefore, Creditor prays that Debtor's Plan not be confirmed and that these proceedings be

6 dismissed with prejudice.

7
                                        SCHEER LAW GROUP, LLP
8

9 DATED: October 31, 2024                /s/ Joshua L. Scheer
                                         #242722
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28