**37**

1  SCHEER LAW GROUP, LLP
   JOSHUA L. SCHEER #242722
2  REILLY D. WILKINSON #250086
   85 Argonaut, Suite 202
3  Aliso Viejo, CA 92656
   Telephone: (949) 263-8757
4  Facsimile: (949) 308-7373
   jscheer@scheerlawgroup.com
5  GM.300-002S

6  Attorneys for Secured Creditor

7

                UNITED STATES BANKRUPTCY COURT FOR THE
8
                     EASTERN DISTRICT OF CALIFORNIA
9
                          SACRAMENTO DIVISION
10

11                                          Bk. No. 24-24120

12  In re:                                  Chapter 13

13  Kristina Lynn Fluetsch,                 DCN JLS-1

14             Debtor.
                                            **EXHIBITS IN SUPPORT OF THE**
15                                          **DECLARATION IN SUPPORT OF**
                                            **OBJECTIONS TO CONFIRMATION OF**
16                                          **PLAN**

17                                          Hearing – Confirmation Hearing
                                            Date: November 19, 2024
18                                          Time: 9:00 AM
                                            Place: Courtroom 28, 7th Floor
19                                          501 I Street, Sacramento, CA

20

21

22          Michael Gorenberg, an unmarried man, $200,000.00/$690,000.00ths; Barry L.

23  Chin and Susan Y. Chin, Trustees, or their successors in trust, under the Chin Living Trust, dated

24  April 13, 2001, and any amendments thereto, $150,000.00/$690,000.00ths; Tuyen V. Quoc and

25  Myung S. Lee, Trustees of the Quoc-Lee Family Trust U/D/T dated March 3 1, 1999,

26  $150,000.00/$690,000.00ths; Siva Uppalapati and Padma Uppalapati, as CO-Trustees of the

27  Uppasana22 Family Trust, U/A dated November 8, 2022, $140,000.00/$690,000.00ths; Chin-

28  Chai Low and Lai-Fen Wong, Trustees of the Low/ Wong Family Trust dated September 9,

                                        1

1999, and any amendments thereto,  $50,000.00/$690,000.00ths, their successors and/or

assignees (collectively, "**Creditor**"), will refer to the following Exhibits:

| Exhibit | Title | Page |
|:---:|---|---|
| 1 | Note | 3 |
| 2 | Deed of Trust | 11 |
| 3 | Business Purpose Letter | 34 |
| 4 | Certificate of Business Purpose of Loan | 36 |

EXHIBIT 1

Loan No.:      *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

# PROMISSORY NOTE

**$690,000.00**                                                  **12/14/2022**

*Property Address(es): 2722 Latham Drive, Sacramento, CA 95864*

      **FOR VALUE RECEIVED**, the undersigned, **Kristina L. Fluetsch** (collectively, "**Borrower**"), whose address for purposes of this Promissory Note (this "**Note**") is 2722 Latham Drive, Sacramento, CA 95864, PROMISES TO PAY to the order of **See Exhibit "B"** (the "**Lender**"), at FCI Lender Services Inc, 8180 East Kaiser Blvd, Anaheim, CA 92808 (the State of California is referred to as the "**State**") or such other place as the Lender may specify, the principal sum of Six Hundred and Ninety Thousand Dollars **($690,000.00)**, together with interest thereon from the Date of Disbursement (as defined below) at the rate of 12.0% per annum (the "**Contract Rate**"). Interest shall be computed on the basis of a 365 day year.

**1.**      **Payments.**

      Borrower promises to pay this Note in lawful money of the United States of America as follows:

      (a)     **Beginning Interest.** Interest from the Date of Disbursement through the end of the month shall be due and payable on the Date of Disbursement and shall be withheld from Lender's funding to the escrow/closing for this Loan or paid from escrow.

      (b)     **Scheduled Payments.** The installment payments on this Note (exclusive of impound payments per the Loan Agreement) shall be as follows:

| Number of Payments | Amount of Payment | Date Payment Series Begins |
|---|---|---|
| 23 | $6,900.00 | On the first day of each month starting on 02/01/2023 |
| 1 | $696,900.00 | 01/01/2025 |

      (c)     **Definitions.** The day of the month on which payments are due is called the "Installment Payment Date." The last day in the last series above is called the "**Date of Maturity**." The "Date of Disbursement" for purposes of this Note shall mean the day upon which a closing agent disburses any portion of the principal amount of this Note or upon recordation of the Security Instruments, whichever occurs first.

      (d)     **Application of Payments.** Lender shall determine the method of applying payments and credits to the Loan. Each installment payment shall be applied first to accrued interest and then to principal. Interest shall accrue on amounts withheld for completion of improvements to the real property securing this Note (the "Holdback").

      (e)     **Payment Address.** Payments shall be made to Lender at this address until Borrower is given notice of a different address:

                         **FCI Lender Services Inc, 8180 East Kaiser Blvd, Anaheim, CA 92808**

      (f)     **Holdback.** If Borrower executes a Holdback Agreement with the other documents for this Loan, that agreement shall control the Holdback Agreement. The amount thus held back shall itself bear interest at the rate of this Note.

**2.**      **Late Charge.**

      If any installment of principal and/or interest not be paid within 10 Days after the due date (the "Grace Period Expiration Date"), Borrower shall also pay to Lender a late charge of 10% of such installment. If this Note provides for a balloon payment and the balloon payment is not paid when due, If this loan was arranged by a mortgage broker Borrower shall pay two regular installment monthly late charges plus an additional monthly installment late charge for each month or portion thereof thereafter that the balloon payment remains unpaid. THE

*Loan No.:* ▮▮▮▮▮     *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

LATE CHARGE SHALL BE PAID WITHOUT PREJUDICE TO THE RIGHT OF THE LENDER TO COLLECT ANY OTHER AMOUNTS PROVIDED TO BE PAID OR TO DECLARE A DEFAULT UNDER THIS NOTE OR THE SECURITY INSTRUMENT. THE LATE CHARGE SHALL BE PAYABLE NOT LATER THAN THE DUE DATE OF THE NEXT PAYMENT AND SHALL BE SECURED BY THE SECURITY INSTRUMENT AND OTHER SECURITY DOCUMENTS. BORROWER RECOGNIZES THAT ITS DEFAULT IN MAKING ANY PAYMENT AS AGREED TO BE PAID WHEN DUE, OR THE OCCURRENCE OF ANY OTHER EVENT OF DEFAULT UNDER THE SECURITY INSTRUMENT OR ANY OTHER SECURITY DOCUMENT, WILL REQUIRE LENDER TO INCUR ADDITIONAL EXPENSE IN SERVICING AND ADMINISTERING THE LOAN, IN LOSS TO LENDER OF THE USE OF THE MONEY DUE AND IN FRUSTRATION TO LENDER IN MEETING ITS OTHER FINANCIAL AND LOAN COMMITMENTS AND THAT THE DAMAGES CAUSED THEREBY WOULD BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN. BORROWER AGREES (A) THAT AN AMOUNT EQUAL TO THE LATE CHARGE PLUS THE ACCRUAL OF INTEREST AT THE DEFAULT RATE IS A REASONABLE ESTIMATE OF THE DAMAGE TO LENDER CAUSED BY A LATE PAYMENT, AND (B) THAT THE ACCRUAL OF INTEREST AT THE DEFAULT RATE FOLLOWING ANY OTHER EVENT OF DEFAULT IS A REASONABLE ESTIMATE OF THE DAMAGE TO LENDER CAUSED BY ANOTHER EVENT OF DEFAULT, REGARDLESS OF WHETHER THERE HAS BEEN AN ACCELERATION OF THE DEBT. NOTHING IN THIS NOTE SHALL BE CONSTRUED AS AN OBLIGATION ON THE PART OF LENDER TO ACCEPT, AT ANY TIME, LESS THAN THE FULL AMOUNT THEN DUE, OR AS A WAIVER OR LIMITATION OF LENDER'S RIGHT TO COMPEL PROMPT PERFORMANCE.

INITIAL: _____     INITIAL: _____

**3.     Guaranteed Interest Period.**

After 6 months from the date of this Note (the "**Guarantee Period**"), Borrower may prepay this Note without penalty. This Loan has Guaranteed Interest of $41,400.00, meaning Prepayment sooner shall include interest on the original Loan Amount (not reduced for prepayments) for the number of days between the date of prepayment and the remaining days in the Guarantee Period (the "**Guaranteed Interest**"). Partial prepayments shall not relieve the Borrower from making any payment due prior to or after, the time of prepayment. Prepayments shall be credited to installments of principal in the inverse order of their maturity.

**4.     Guaranteed Interest/Prepayment Premium Upon Acceleration.**

If there is an Event of Default and the Lender accelerates payment of the indebtedness, the Lender shall suffer damages and opportunity costs which are now difficult or impossible to ascertain. Therefore, if that occurs, Borrower shall pay to the Lender, as liquidated damages and not as a penalty, and in addition to the entire balance of principal and accrued interest and all other sums then due under this Note, the Security Instrument and the Other Security Documents, an amount equal to the unpaid Guaranteed Interest or Prepayment Premium computed as if the entire unpaid balance of this Note were prepaid on the date of default.

The Borrower waives all rights under California Civil Code Section 2954.10 which provides, in part, as follows:

AN OBLIGEE WHICH ACCELERATES THE MATURITY DATE OF THE PRINCIPAL AND ACCRUED INTEREST, PURSUANT TO CONTRACT, ON ANY LOAN SECURED BY A MORTGAGE OR DEED OF TRUST ON REAL PROPERTY UPON THE CONVEYANCE OF ANY RIGHT, TITLE, OR INTEREST IN THAT PROPERTY, MAY NOT CLAIM, EXACT, OR COLLECT ANY CHARGE, FEE, OR PENALTY FOR ANY PREPAYMENT RESULTING FROM THAT ACCELERATION.

The Borrower understands and acknowledges that the Lender bargained for this waiver as part of the consideration that induced the Lender to enter into this transaction. The Borrower initials this paragraph for the purpose of evidencing its understanding of Civil Code Section 2954.10 recited in part above and the Borrower's agreement to the waiver of its terms.

INITIAL: _____     INITIAL: _____

*Loan No.:* ▊▊▊▊      *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

## 5.    Security Instrument.

This Note is secured, without limitation, by one or more DEED(S) OF TRUST (or MORTGAGE/INDENTURE), SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FINANCING STATEMENT (collectively, the "Security Instrument") of the same date given by Borrower to California TD Specialists, A California Corporation , as Trustee(s), for the benefit of Lender, on certain real estate and personal property (the "**Mortgaged Property**") and the Other Security Documents (as defined in the Security Instrument, referred to as the "**Other Security Documents**"). This Promissory Note is the Note referred to in, and is entitled to the benefits of, the Security Instrument and the Other Security Documents. Among the provisions of the Security Instrument is the following paragraph 12:

If all, or any part, of the Mortgaged Property, or any interest therein, is sold, conveyed, alienated, transferred or encumbered (or if a beneficial interest in Borrower is sold, transferred or encumbered and Borrower is not a natural person), whether voluntary or involuntarily, without Lender's prior written consent, which Lender may withhold in its sole and absolute discretion, Lender shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any Note evidencing the same, immediately due and payable. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 10 days from the date the notice is delivered or mailed within which borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 6.    Event of Default.

Borrower shall be in default under this Note (referred to as an "**Event of Default**") and the whole sum of principal and interest shall become due and payable at the option of the Lender without notice or demand, upon: (i) the nonpayment or non-performance, by the Grace Period Expiration Date or Date of Maturity of any installment of principal and/or interest, or any other monetary or non-monetary obligation under this Note, the Security Instrument or the Other Security Documents; or (ii) any other Event of Default under the Security Instrument, Loan Agreement or the Other Security Documents.

## 7.    Default Rate.

If an Event of Default occurs, this Note shall, without notice to Borrower, thereafter bear interest at the rate of the lesser of the: (i) Maximum Rate (as hereinafter defined); or (ii) the then Contract Rate plus 6.00% per annum (which lesser rate is referred to as the "**Default Rate**") from the date of the Event of Default. Lender and Borrower agree that the Default Rate is not a penalty and shall not be imposed as to an installment payment default until the such default lasts 30 days or more. The Default Rate is intended to estimate the costs to the Lender with administering a default, which consists of negotiations, valuation, analysis, communications and similar activities while the Lender is burdened with the cost of servicing and working out a resolution of a defaulted Note. By initialing below, Borrower acknowledges the issue of compensation to the Lender upon default has been considered by the parties.

INITIAL: _____ INITIAL: _____

## 8.    Non-Waiver.

Acceptance by Lender of any payment for less than what is due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due before the Grace Period Expiration Date, shall be and continue to be an Event of Default under this Note. The rights or remedies of the Lender, as provided in this Note, the Security Instrument or any of the Other Security Documents, or as provided at law or in equity shall be cumulative and concurrent, and may be pursued singly, jointly or successively against the Mortgaged Property, Leases, Rents (as defined in the Security Instrument) or any other funds, property or security held by Lender for the payment or performance thereof, or against the Borrower or otherwise, at the sole discretion of the Lender.

*Loan No.:*       *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

The failure to exercise any such right or remedy shall not be construed as a waiver or release of any rights or remedies or of the right to exercise them at any later time.

**9.    Miscellaneous.**

Borrower and all endorsers, guarantors, sureties, accommodation parties hereof, and all other persons liable or to become liable for all or any part of the indebtedness under this Note, the Security Instrument, and the Other Security Documents, waive all applicable exemption rights, whether under the laws of the State, homestead laws, or otherwise, and also waive valuation and appraisement, diligence, presentment, protest and demand, and also notice of protest, of demand, of nonpayment, of dishonor, of acceleration, of intention to accelerate and of maturity. All endorsers, guarantors, sureties, and accommodation parties hereby consent to any and all renewals, extensions or modifications of the terms hereof, including time for payment. Any such renewals, extensions or modifications may be made without notice to any of said parties.

**10.    Attorney's Fees.**

Borrower and all endorsers, guarantors, sureties, accommodation parties hereof and all other persons liable or to become liable for all or any part of this indebtedness agree to pay all costs of collection, including reasonable attorneys' fees and all costs of suit, if this Note is not paid when due, or if it is necessary to protect the security for this Note or to commence foreclosure proceedings under the Security Instrument or any of the Other Security Documents, or if Lender is made a party to any litigation because of this Note, the Security Instrument or any of the Other Security Documents, whether or not suit is filed, and whether through courts of original jurisdiction, as well as in courts of appellate jurisdiction, or through a bankruptcy court or other legal proceedings. Such costs of collection shall include attorney's fees and costs in all aspects of bankruptcy proceedings affecting the security for this Note or performance hereunder, including plan objection proceedings, objections to discharge, claim objection proceedings, preference actions, relief from stay litigation, motions to dismiss, convert or appoint a trustee, case monitoring and serving on a creditor's committee.

**11.    Amendment.**

This Note shall not be amended, modified or changed, nor shall any waiver of any of its provision be effective unless accomplished by an instrument in writing signed by the party against whom enforcement of any amendment, modification, change or waiver is sought.

**12.    Usury Exempt.**

Borrower acknowledges that this Note and the loan it evidences was made by a licensed California Finance Lender or licensed California Real Estate Broker or it was arranged by a licensed California Real Estate Broker and that the broker's participation was a material factor in the consummation of this transaction. None of the terms and provisions contained in this Note, the Security Instrument, or any of the Other Security Documents, shall ever be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the Maximum Rate. The Borrower or other party now or later liable for the payment of this Note shall never be required to pay interest on this Note at a rate in excess of the Maximum Rate, and the provisions of this paragraph shall control over all other provisions and of any other instrument executed in connection herewith this loan transaction. If Lender collects monies which are deemed to be interest in excess of the Maximum Rate, all excess sums shall be applied against the unpaid principal balance and not to the payment of interest; and if a surplus remains after full payment of principal and lawful interest, the surplus shall be refunded to the Borrower in cash and the Borrower hereby agrees to accept such refund. As used in this Note, the term **"Maximum Rate"** means the maximum rate (or, if the context so permits or requires, an amount calculated at such rate) of interest which, at the time in question would not cause the interest charged on the indebtedness evidenced by this Note, the Security Instrument, or any of the Other Security Documents at such time to exceed the maximum amount which Lender would be allowed to contract for, charge, take, reserve or receive under the laws of the State or any other applicable law after taking into account, to the extent required by the laws of the State or any other applicable law, all relevant payments or charges under this Note, the Security Instrument, and the Other Security Documents.

*Loan No.:*  *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

### 13. Joint and Several.

Whenever used herein, the words "Borrower" and "Lender" shall be deemed to include their respective successors and assigns. In the event Borrower is comprised of more than one individual or entity, each such individual or entity shall be jointly and severally liable under this Note.

### 14. Time.

Time is of the essence of this Note.

### 15. Notice.

Any notice, demand, statement, request, or consent made under this Note shall be in writing and shall be deemed given when hand-delivered or within Three (3) Days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Borrower or Lender, as the case may be, shall in like manner designated in writing.

### 16. Cross-Default.

Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any affiliate of Borrower to Lender or any affiliate of Lender; shall, at Lender's option, constitute a default under this Note.

### 17. Choice of Law.

This Note is to be governed by and construed in accordance with the laws of the State, without giving effect to the conflicts of law provisions thereof. Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Note. Borrower consents to the jurisdiction of the state and federal courts in the State for any actions involving the enforcement or interpretation of this Note, Security Instrument and the transaction they evidence.

### 18. Jury Waiver.

BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY SUIT INVOLVING THE LENDER OR ANY ARRANGER OF THIS LOAN AS WELL AS ANY CLAIM FOR PUNITIVE DAMAGES.

### 19. Entire Agreement.

THIS NOTE, THE SECURITY INSTRUMENT, ANY GUARANTY AND THE OTHER SECURITY DOCUMENTS COLLECTIVELY REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES.

### 20. Business Purpose.

Borrower represents that the primary purpose of this loan is for Borrower's business, not for personal, family or household purposes.

*(signatures follow on next page)*

*Loan No.:*      *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

**IN WITNESS WHEREOF**, the undersigned has executed and delivered this Note effective as of the date first above written.

**BORROWER: Kristina L. Fluetsch**

By: _____

    Name: Kristina L. Fluetsch

*Loan No.*           *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

## EXHIBIT "B"

### LENDER LISTING
### as tenants in common

| Lender Name | Fractional Ownership As Tenants in Common |
|---|---|
| Michael Gorenberg, an unmarried man | $200,000.00/$690,000.00ths |
| Barry L. Chin and Susan Y. Chin, Trustees, or their successors in trust, under the Chin Living Trust, dated April 13, 2001, and any amendments thereto | $150,000.00/$690,000.00ths |
| Tuyen V. Quoc and Myung S. Lee, Trustees of the Quoc-Lee Family Trust U/D/T dated March 31, 1999 | $150,000.00/$690,000.00ths |
| Siva Uppalapati and Padma Uppalapati, as CO-Trustees of the Uppasana22 Family Trust, U/A dated November 8, 2022 | $140,000.00/$690,000.00ths |
| Chin-Chai Low and Lai-Fen Wong, Trustees of the Low/ Wong Family Trust dated September 9, 1999, and any amendments thereto | $50,000.00/$690,000.00ths |

EXHIBIT 2

Loan No.: ▓▓▓▓▓

...

**Sacramento County**
**Donna Allred, Clerk/Recorder**

Doc # **202212190884**

| | | Fees | $388.00 |
| 12/19/2022 | 2:34:59 PM | Taxes | $0.00 |
| BML | Electronic | PCOR | $0.00 |
| Titles | 5 | Paid | $388.00 |
| Pages | 22 | | |

**RECORDING REQUESTED BY:**
Orange Coast Title Company of Northern California

**AND WHEN RECORDED MAIL TO:**
Chin-Chai
20232 Blauer Dr
Saratoga CA 95070

Loan Number ▓▓▓▓▓
*APN(s):* 293-0070-030-0000

Above Space for Recorder's Use

# DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASE

## AND RENTS AND FIXTURE FILING STATEMENT

*Note Amount:* $690,000.00   *Property Address(es):* 2722 Latham Drive, Sacramento, CA 95864

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH
CALIFORNIA COMMERCIAL CODE SECTION 9502.

**This Deed of Trust, Security Agreement and Fixture Filing (with Assignment of Rents and Leases)**
("**Security Instrument**") is made as of 12/14/2022 between, **Kristina L. Fluetsch, a married woman, as her
sole and separate property**, trustor, herein collectively called "**Borrower**," whose address is 2722 Latham
Drive, Sacramento, CA 95864 and See **Exhibit "B"**, beneficiary, herein collectively called "**Lender**," whose
address is 8180 East Kaiser Blvd, Anaheim, CA 92808 and California TD Specialists, A California Corporation,
herein called "**Trustee**."

Borrower, in consideration of (i) the loan in the original principal amount of **$690,000.00** (the "**Mortgage
Loan**") evidenced by that certain Promissory Note dated 12/14/2022, executed by Borrower and made payable
to the order of Lender (as amended, restated, replaced, supplemented, or otherwise modified from time to time,
the "**Note**"), (ii) that certain Loan and Security Agreement dated as of the date of this Security Instrument,
executed by and between Borrower and Lender (as amended, restated, replaced, supplemented or otherwise
modified from time to time, the "**Loan Agreement**"), and (iii) the trust created by this Security Instrument, and
to secure to Lender the repayment of the Indebtedness (as defined in this Security Instrument), and all renewals,
extensions and modifications thereof, and the performance of the covenants and agreements of Borrower
contained in the Loan Documents (as defined in the Loan Agreement), excluding any Environmental Indemnity
Agreement (as defined in this Security Instrument), irrevocably and unconditionally mortgages, grants, warrants,
conveys, bargains, sells, and assigns to Trustee, in trust, for benefit of Lender, with power of sale and right of
entry and possession, the Mortgaged Property (as defined in this Security Instrument), including the real property
located at **2722 Latham Drive, Sacramento, CA 95864** and described in Exhibit "A" attached to this Security
Instrument and incorporated by reference (the "**Land**"), to have and to hold such Mortgaged Property unto Trustee
and Trustee's successors and assigns, forever; Borrower hereby releasing, relinquishing, and waiving, to the fullest
extent allowed by law, all rights and benefits, if any, under and by virtue of the homestead exemption laws of the
Property Jurisdiction, if applicable.

Loan No.:           *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

Borrower represents and warrants that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to mortgage, grant, warrant, convey, bargain, sell, and assign the Mortgaged Property, and that the Mortgaged Property is not encumbered by any Lien (as defined in this Security Instrument) other than Permitted Encumbrances (as defined in this Security Instrument). Borrower covenants that Borrower will warrant and defend the title to the Mortgaged Property against all claims and demands other than Permitted Encumbrances. Borrower, and by their acceptance hereof, each of Trustee and Lender covenants and agrees as follows:

**1.     Defined Terms.**

Capitalized terms used and not specifically defined herein have the meanings given to such terms in the Loan Agreement. All terms used and not specifically defined herein, but which are otherwise defined by the UCC, shall have the meanings assigned to them by the UCC. The following terms, when used in this Security Instrument, shall have the following meanings:

**"Bankruptcy Code"** means Title 11 of the United States Code entitled "Bankruptcy" as now and hereafter in effect, or any successor statute.

**"Collateral Account"** means any account designated as such by Lender pursuant to a Collateral Agreement or as established pursuant to the Loan Agreement, including any impound account, property reserves, debt coverage reserves and other reserves and impounds.

**"Collateral Account Funds"** means, collectively, the funds on deposit in any Collateral Account.

**"Collateral Agreement"** means any separate agreement between Borrower and Lender and any other party (if applicable) for the establishment of any other fund, reserve or account related to the Mortgage Loan or the Mortgaged Property.

**"Condemnation Action"** means any action or proceeding, however characterized or named, relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect.

**"Default Rate"** means an interest rate defined in the Note.

**"Enforcement Costs"** means all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any Event of Default under the Loan Agreement or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Agreement or any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event) or judicial or non-judicial foreclosure proceeding, to the extent permitted by law.

**"Environmental Indemnity Agreement"** means that certain Environmental Indemnity Agreement dated as of the date of this Security Instrument, executed by Borrower to and for the benefit of Lender, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

**"Environmental Laws"** has the meaning set forth in the Environmental Indemnity Agreement.

**"Event of Default"** means the breach or non-performance, when due, of any obligation of the Note, Loan Agreement or this Security Instrument or the breach of any covenant, representation of warranty in the Note, Loan Agreement or this Security Agreement, including but not limited to:

(a)    If any payment under the Note is not paid within any grace period in the Note, or if any other monetary or non-monetary obligation of Borrower to Lender the Note, this Security Instrument or the Loan Agreement is not paid or performed within the due date and any specified grace period;

(b)    If any of the Impositions is not paid before it becomes delinquent;

(c)    If the Policies are not kept in good standing;

(d)    If Borrower does not comply with the provisions of Paragraph 12 of this Security Instrument;

(e)    If any representation or warranty of Borrower, or of any person guaranteeing or otherwise liable for payment of the Indebtedness (a "Guarantor") or in any such Guaranty, or in any certificate, report, financial statement or other instrument furnished in connection with the making of the Note, this Security Instrument, the Loan Agreement or any such Guaranty, shall be false or misleading in any material respect and the inaccuracy is not cured to the reasonable satisfaction of Lender, within fifteen (15) days after written notice from Lender to Borrower provided, however, that if the default is of a kind that it cannot be cured within 15 days, then Borrower shall not be in default if Borrower commences curing the default within a reasonable time and diligently completes the cure within a reasonable time, but not more than 60 days after the date of the original written notice;

(f)    If Borrower or any Guarantor makes an assignment for the benefit of creditors;

(g)    If a receiver, liquidator or trustee of Borrower or of any Guarantor shall be appointed or if Borrower or any Guarantor is adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, is filed by or against Borrower or any Guarantor, or if any proceeding for the dissolution or liquidation of Borrower or of any Guarantor is instituted and, if such appointment, adjudication, petition or proceeding was involuntary, if it is not discharged, stayed or dismissed within thirty (30) days or if Borrower is generally not paying its debts as they become due;

(h)    If Borrower defaults under any other mortgage, deed of trust or security agreement covering any part of the Mortgaged Property whether it be superior or inferior to the lien of this Security Instrument, and if such default is not cured within any applicable cure or grace period;

(i)    If the Mortgaged Property is subjected (i) to any lien which is superior to the lien of this Security Instrument such as a Property Assessed Clean Energy ("PACE"), Home Energy Renovation Opportunity ("HERO") obligation, loans, liens or assessments. other than a lien for ordinary local real estate taxes and assessments not yet delinquent and any Permitted Encumbrances, or (ii) to any mechanic's, materialmen's, construction, or other lien which is superior to the lien of this Security Instrument and such lien remains undischarged for thirty (30) days;

(j)    If this Security Instrument is junior to one or more existing encumbrances of record, if Borrower fails to provide Lender, upon request satisfactory evidence that all senior encumbrances are current; or

(k)    If Borrower is a natural person and the Mortgage Property is residential, occupancy of the Mortgaged Property unless designated as owner-occupied in the loan application.

"**Fixtures**" means all Goods that are so attached or affixed to the Land or the Improvements as to constitute a fixture under the laws of the Property Jurisdiction.

"**Foreclosure Event**" means:

(a)    foreclosure under the Security Instrument;

(b)    any other exercise by Lender of rights and remedies (whether under the Security Instrument or under applicable law, including Insolvency Laws) as holder of the Mortgage Loan and/or the Security Instrument,

*Loan No.:* ▮▮▮▮▮        *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

as a result of which Lender (or its designee or nominee) or a third party purchaser becomes owner of the Mortgaged Property; or,

      (c)     delivery by Borrower to Lender (or its designee or nominee) of a deed or other conveyance of Borrower's interest in the Mortgaged Property in lieu of any of the foregoing.

**"Goods"** means all of Borrower's present and hereafter acquired right, title and interest in all goods which are used now or in the future in connection with the ownership, management, or operation of the Land or the Improvements or are located on the Land or in the Improvements, including inventory; furniture; furnishings; machinery, equipment, engines, boilers, incinerators, and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring, and conduits used in connection with radio, television, security, fire prevention, or fire detection, or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers, and other appliances; light fixtures, awnings, storm windows, and storm doors; pictures, screens, blinds, shades, curtains, and curtain rods; mirrors, cabinets, paneling, rugs, and floor and wall coverings; fences, trees, and plants; swimming pools; exercise equipment; supplies; tools; books and records (whether in written or electronic form); websites, URLs, blogs, and social network pages; computer equipment (hardware and software); and other tangible personal property which is used now or in the future in connection with the ownership, management, or operation of the Land or the Improvements or are located on the Land or in the Improvements.

**"Governmental Authority"** means any court, board, commission, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any court, board, commission, department or body of any municipal, county, state or federal governmental unit, that has or acquires jurisdiction over Borrower or the Mortgaged Property or the use, operation or improvement of the Mortgaged Property.

**"Guaranteed Interest"** shall have the meaning set forth in the Note.

**"Imposition Deposits"** means deposits in an amount sufficient to accumulate with Lender the entire sum required to pay the Impositions when due.

**"Impositions"** means

      (a)     any water and sewer charges which, if not paid, may result in a lien on all or any part of the Mortgaged Property;

      (b)     the premiums for fire and other casualty insurance, liability insurance, rent loss insurance and such other insurance as Lender may require under the Loan Agreement;

      (c)     Taxes; and

      (d)     amounts for other charges and expenses assessed against the Mortgaged Property which Lender at any time reasonably deems necessary to protect the Mortgaged Property, to prevent the imposition of liens on the Mortgaged Property, or otherwise to protect Lender's interests, all as reasonably determined from time to time by Lender.

**"Improvements"** means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements, facilities, and additions and other construction on the Land.

**"Indebtedness"** means the principal of, interest on, and all other amounts due at any time under the Note, the Loan Agreement, this Security Instrument or any other Loan Document (other than the Environmental Indemnity Agreement and any Guaranty), including prepayment premiums, guaranteed interest, late charges, interest charged at the Default Rate, and accrued interest as provided in the Loan Agreement and this Security Instrument, advances, costs and expenses to perform the obligations of Borrower or to protect the Mortgaged Property or the security of this Security Instrument, all other monetary obligations of Borrower under the Loan Documents (other

than the Environmental Indemnity Agreement), including amounts due as a result of any indemnification obligations, and any Enforcement Costs.

**"Insolvency Laws"** means the Bankruptcy Code, together with any other federal or state law affecting debtor and creditor rights or relating to the bankruptcy, insolvency, reorganization, arrangement, moratorium, readjustment of debt, dissolution, liquidation or similar laws, proceedings, or equitable principles affecting the enforcement of creditors' rights, as amended from time to time.

**"Land"** means the real property described in Exhibit "A."

**"Leases"** means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property (including proprietary leases or occupancy agreements if Borrower is a cooperative housing corporation), and all modifications, extensions or renewals thereof.

**"Lien"** means any claim or charge against property for payment of a debt or an amount owed for services rendered, including any mortgage, deed of trust, deed to secure debt, security interest, tax lien, any materialman's or mechanic's lien, or any lien of a Governmental Authority, including any lien in connection with the payment of utilities, or any other encumbrance.

**"Mortgaged Property"** means all of Borrower's present and hereafter acquired right, title and interest, if any, in and to all of the following:

    (a)    the Land;

    (b)    the Improvements;

    (c)    the Personalty;

    (d)    current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefitting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

    (e)    insurance policies relating to the Mortgaged Property (and any unearned premiums) and all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirements;

    (f)    awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property, including any awards or settlements resulting from (1) Condemnation Actions, (2) any damage to the Mortgaged Property caused by governmental action that does not result in a Condemnation Action, or (3) the total or partial taking of the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

    (g)    contracts, options and other agreements for the sale of the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

    (h)    Leases and Lease guaranties, letters of credit and any other supporting obligation for any of the Leases given in connection with any of the Leases, and all Rents;

    (i)    earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the Mortgage Loan and, if Borrower is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents;

    (j)    Imposition Deposits;

Loan No.: ▉▉▉     *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

   (k)     refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Security Instrument is dated);

   (l)     tenant security deposits;

   (m)     names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property;

   (n)     products, and all cash and non-cash proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; and

   (o)     all of Borrower's right, title and interest in the oil, gas, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and estates in, under and on the Mortgaged Property and other oil, gas and mineral interests with which any of the foregoing interests or estates are pooled or unitized.

**"Permitted Encumbrance"** means only the easements, restrictions and other matters listed in a schedule of exceptions to coverage in the Title Policy and Taxes for the current tax year that are not yet due and payable.

**"Personalty"** means all of Borrower's present and hereafter acquired right, title and interest in all Goods, accounts, choses of action, chattel paper, documents, general intangibles (including Software), payment intangibles, instruments, investment property, letter of credit rights, supporting obligations, computer information, source codes, object codes, records and data, all telephone numbers or listings, claims (including claims for indemnity or breach of warranty), deposit accounts and other property or assets of any kind or nature related to the Land or the Improvements now or in the future, including operating agreements, surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements, and all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land.

**"Prepayment Premium"** has the meaning set forth in the Note.

**"Property Jurisdiction"** means the jurisdiction in which the Land is located.

**"Rents"** means all rents (whether from residential or non-residential space), revenues and other income from the Land or the Improvements, including subsidy payments received from any sources, including payments under any "Housing Assistance Payments Contract" or other rental subsidy agreement (if any), parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Mortgaged Property, whether now due, past due, or to become due, and tenant security deposits.

**"Taxes"** means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, may become a lien, on the Land or the Improvements or any taxes upon any Loan Document.

**"Title Policy"** means the mortgagee's loan policy of title insurance issued in connection with the Mortgage Loan and insuring the lien of the Security Instrument as set forth therein, as approved by Lender.

**"UCC"** means the Uniform Commercial Code in effect in the Property Jurisdiction, as amended from time to time.

**"UCC Collateral"** means any or all of that portion of the Mortgaged Property in which a security interest may be granted under the UCC and in which Borrower has any present or hereafter acquired right, title or interest.

**2.     Security Agreement; Fixture Filing.**

   (a)     To secure to Lender, the repayment of the Indebtedness, and all renewals, extensions and modifications thereof, and the performance of the covenants and agreements of Borrower contained in the Loan Documents, Borrower hereby pledges, assigns, and grants to Lender a continuing security interest in the UCC

*Loan No.:*     *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

Collateral. This Security Instrument constitutes a security agreement and a financing statement under the UCC. This Security Instrument also constitutes a financing statement pursuant to the terms of the UCC with respect to any part of the Mortgaged Property that is or may become a Fixture under applicable law, and will be recorded as a "fixture filing" in accordance with the UCC. Borrower hereby authorizes Lender to file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest without the signature of Borrower. If an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the UCC or otherwise provided at law or in equity, in addition to all remedies provided by this Security Instrument and in any Loan Document. Lender may exercise any or all of its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability or validity of Lender's other remedies. For purposes of the UCC, the Debtor is Borrower and the Secured Party is Lender. For this purpose, the following information is set forth:

      (b)      Name and address of Debtor:

            Kristina L. Fluetsch,
            2722 Latham Drive, Sacramento, CA 95864

      (c)      Name and Address of Secured Party:

            See Exhibit "B"
            8180 East Kaiser Blvd, Anaheim, CA 92808

This document covers goods that are or are to become fixtures.
Description of Real Estate: See Exhibit "A."
Owner of Record of Real Estate: Debtor.
This Financing Statement covers Proceeds.
Products of the Collateral are also covered.

      (d)      Borrower represents and warrants that: (1) Borrower maintains its chief executive office at the location set forth in the subsection (a) above, and Borrower will notify Lender in writing of any change in its chief executive office within five (5) days of such change; (2) Borrower is the record owner of the Mortgaged Property; (3) Borrower's state of incorporation, organization, or formation, if applicable, is as set forth on Page 1 of this Security Instrument; (4) Borrower's exact legal name is as set forth on Page 1 of this Security Instrument; (5) Borrower is the owner of the UCC Collateral subject to no liens, charges or encumbrances other than the lien hereof; (6) except as expressly provided in the Loan Agreement, the UCC Collateral will not be removed from the Mortgaged Property without the consent of Lender; and (7) no financing statement covering any of the UCC Collateral or any proceeds thereof is on file in any public office except pursuant hereto.

      (e)      All property of every kind acquired by Borrower after the date of this Security Instrument which by the terms of this Security Instrument shall be subject to the lien and the security interest created hereby, shall immediately upon the acquisition thereof by Borrower and without further conveyance or assignment become subject to the lien and security interest created by this Security Instrument. Nevertheless, Borrower shall execute, acknowledge, deliver and record or file, as appropriate, all and every such further deeds of trust, mortgages, deeds to secure debt, security agreements, financing statements, assignments and assurances as Lender shall require for accomplishing the purposes of this Security Instrument and to comply with the rerecording requirements of the UCC.

**3.      Assignment of Leases and Rents; Appointment of Receiver; Lender in Possession.**

      (a)      As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Leases and Rents. It is the intention of Borrower to establish present, absolute and irrevocable transfers and assignments to Lender of all Leases and Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Borrower and Lender intend the assignments of Leases and Rents to be effective immediately and to constitute absolute present assignments, and not assignments for additional security only. Only for purposes of giving effect to these absolute

*Loan No.:* ███████     *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

assignments of Leases and Rents, and for no other purpose, the Leases and Rents shall not be deemed to be a part of the Mortgaged Property. However, if these present, absolute and unconditional assignments of Leases and Rents are not enforceable by their terms under the laws of the Property Jurisdiction, then each of the Leases and Rents shall be included as part of the Mortgaged Property, and it is the intention of Borrower, in such circumstance, that this Security Instrument create and perfect a lien on each of the Leases and Rents in favor of Lender, which liens shall be effective as of the date of this Security Instrument.

(b)      Until an Event of Default has occurred and is continuing, but subject to the limitations set forth in the Loan Documents, Borrower shall have a revocable license to exercise all rights, power and authority granted to Borrower under the Leases (including the right, power and authority to modify the terms of any Lease, extend or terminate any Lease, or enter into new Leases, subject to the limitations set forth in the Loan Documents), and to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender, and to apply all Rents to pay amounts due under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities and Impositions (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing (and no event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing), the Rents remaining after application pursuant to the preceding sentence may be retained and distributed by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Security Instrument.

(c)      If an Event of Default has occurred and is continuing, without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, the revocable license granted to Borrower pursuant to Section 3(a) shall automatically terminate, and Lender shall immediately have all rights, powers and authority granted to Borrower under any Lease (including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease) and, without notice, Lender shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid. During the continuance of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender, and Borrower shall, upon Borrower's receipt of any Rents from any sources, pay the total amount of such receipts to Lender. Although the foregoing rights of Lender are self-effecting, at any time during the continuance of an Event of Default, Lender may make demand for all Rents, and Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender. No tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts that are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit.

(d)      If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower, and even in the absence of waste, enter upon, take and maintain full control of the Mortgaged Property, and may exclude Borrower and its agents and employees therefrom, in order to perform all acts that Lender, in its discretion, determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents (including through use of a lockbox, at Lender's election), the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing this assignment of Rents, protecting the Mortgaged Property or the security of this Security Instrument and the Mortgage Loan, or for such other purposes as Lender in its discretion may deem necessary or desirable.

(e)      Notwithstanding any other right provided Lender under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Borrower's solvency, and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 3. If Lender elects to seek the appointment of a receiver for

*Loan No.:*         *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte, if permitted by applicable law. Borrower consents to shortened time consideration of a motion to appoint a receiver. Lender or the receiver, as applicable, shall be entitled to receive a reasonable fee for managing the Mortgaged Property and such fee shall become an additional part of the Indebtedness. Immediately upon appointment of a receiver or Lender's entry upon and taking possession and control of the Mortgaged Property, possession of the Mortgaged Property and all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property, and all security deposits and prepaid Rents, shall be surrendered to Lender or the receiver, as applicable. If Lender or receiver takes possession and control of the Mortgaged Property, Lender or receiver may exclude Borrower and its representatives from the Mortgaged Property.

(f)        The acceptance by Lender of the assignments of the Leases and Rents pursuant to this Section 3 shall not at any time or in any event obligate Lender to take any action under any Loan Document or to expend any money or to incur any expense. Lender shall not be liable in any way for any injury or damage to person or property sustained by any Person in, on or about the Mortgaged Property. Prior to Lender's actual entry upon and taking possession and control of the Land and Improvements, Lender shall not be:

(1)        obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease);

(2)        obligated to appear in or defend any action or proceeding relating to any Lease or the Mortgaged Property; or

(3)        responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property.

The execution of this Security Instrument shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking possession and control by Lender of the Land and Improvements.

(g)        Lender shall be liable to account only to Borrower and only for Rents actually received by Lender. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property by reason of any act or omission of Lender under this Section 3, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law, provided that Lender shall not be released from liability that occurs as a result of Lender's gross negligence or willful misconduct as determined by a court of competent jurisdiction pursuant to a final, non-appealable court order. If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall be added to, and become a part of, the principal balance of the Indebtedness, be immediately due and payable, and bear interest at the Default Rate from the date of disbursement until fully paid. Any entering upon and taking control of the Mortgaged Property by Lender or the receiver, and any application of Rents as provided in this Security Instrument, shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Security Instrument or any Loan Document.

**4.        Protection of Lender's Security.**

If Borrower fails to perform any of its obligations under this Security Instrument or any other Loan Document, or any action or proceeding is commenced that purports to affect the Mortgaged Property, Lender's security, rights or interests under this Security Instrument or any Loan Document (including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Environmental Laws, fraudulent conveyance or reorganizations or proceedings involving a debtor or decedent), Lender may, at its option, make such appearances, disburse or pay such sums and take such actions, whether before or after an Event of Default or whether directly or to any receiver for the Mortgaged Property, as Lender reasonably deems necessary to perform such obligations of Borrower and to protect the Mortgaged Property or Lender's security, rights or interests in the Mortgaged Property or the Mortgage Loan, including:

*Loan No.:* ▮▮▮▮        *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

    (a)      paying fees and out-of-pocket expenses of attorneys, accountants, inspectors and consultants;

    (b)      entering upon the Mortgaged Property to make repairs or secure the Mortgaged Property;

    (c)      obtaining (or force-placing) the insurance required by the Loan Documents; and

    (d)      paying any amounts required under any of the Loan Documents that Borrower has failed to pay.

Any amounts so disbursed or paid by Lender shall be added to, and become part of, the principal balance of the Indebtedness, be immediately due and payable and bear interest at the Default Rate from the date of disbursement until fully paid. The provisions of this Section 4 shall not be deemed to obligate or require Lender to incur any expense or take any action.

**5.**      **Default; Acceleration; Remedies.**

    (a)      If an Event of Default has occurred and is continuing, Lender, at its option, may declare the Indebtedness to be immediately due and payable without further demand, and may either with or without entry or taking possession as herein provided or otherwise, proceed by suit or suits at law or in equity or any other appropriate proceeding or remedy to enforce payment of the Mortgage Loan; to foreclose this Security Instrument judicially or non-judicially by the power of sale granted herein; to enforce or exercise any right under any Loan Document; and to pursue any one (1) or more other remedies provided in this Security Instrument or in any other Loan Document or otherwise afforded by applicable law. Each right and remedy provided in this Security Instrument or any other Loan Document is distinct from all other rights or remedies under this Security Instrument or any other Loan Document or otherwise afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order.

    (b)      Borrower acknowledges that the power of sale granted in this Security Instrument may be exercised or directed by Lender without prior judicial hearing. In the event Lender invokes the power of sale:

        (1)      Lender shall send to Borrower, and any other Persons required to receive such notice, written notice of Lender's election to cause the Mortgaged Property to be sold. In connection therewith, Borrower hereby authorizes and empowers Trustee to take possession of the Mortgaged Property, or any part thereof, and hereby grants to Trustee a power of sale and authorizes and empowers Trustee to sell (or, in the case of the default of any purchaser, to resell) the Mortgaged Property or any part thereof, in compliance with applicable law, including compliance with any and all notice and timing requirements for such sale;

        (2)      Trustee shall have the authority to determine the terms of the sale, subject to applicable law. In connection with any such sale, the whole of the Mortgaged Property may be sold in one (1) parcel as an entirety or in separate lots or parcels at the same or different times. Lender shall have the right to become the purchaser at any such sale. Trustee shall be entitled to receive fees and expenses from such sale not to exceed the amount permitted by applicable law;

        (3)      Trustee shall deliver to the purchaser of the Mortgaged Property a deed or such other appropriate conveyance document conveying the Mortgaged Property so sold without any express or implied covenant or warranty. The recitals in such deed or document shall be prima facie evidence of the truth of the statements made in those recitals; and

        (4)      the outstanding principal amount of the Mortgage Loan and the other Indebtedness, if not previously due, shall be and become immediately due and payable without demand or notice of any kind. If the Mortgaged Property is sold for an amount less than the amount outstanding under the Indebtedness, the deficiency shall be determined by the purchase price at the sale or sales.

        (5)      Borrower acknowledges and agrees that the proceeds of any sale shall be applied as determined by Lender unless otherwise required by applicable law.

*Loan No.:*      *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

(c)     In connection with the exercise of Lender's rights and remedies under this Security Instrument and any other Loan Document, there shall be allowed and included as Indebtedness: all expenditures and expenses authorized by applicable law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender for reasonable legal fees, appraisal fees, outlays for documentary and expert evidence, stenographic charges and publication costs; all expenses of any environmental site assessments, environmental audits, environmental remediation costs, appraisals, surveys, engineering studies, wetlands delineations, flood plain studies, and any other similar testing or investigation deemed necessary or advisable by Lender incurred in preparation for, contemplation of or in connection with the exercise of Lender's rights and remedies under the Loan Documents; and costs (which may be reasonably estimated as to items to be expended in connection with the exercise of Lender's rights and remedies under the Loan Documents) of procuring all abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Mortgaged Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the Loan Documents. All expenditures and expenses of the nature mentioned in this Section 5 and such other expenses and fees as may be incurred in the protection of the Mortgaged Property and rents and income therefrom and the maintenance of the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other Loan Documents, or the Mortgaged Property, including bankruptcy proceedings, any Foreclosure Event, or in preparation of the commencement or defense of any proceedings or threatened suit or proceeding, or otherwise in dealing specifically therewith, shall be so much additional Indebtedness and shall be immediately due and payable by Borrower, with interest thereon at the Default Rate until paid.

(d)     Any action taken by Trustee or Lender pursuant to the provisions of this Section 5 shall comply with the laws of the Property Jurisdiction. Such applicable laws shall take precedence over the provisions of this Section 5, but shall not invalidate or render unenforceable any other provision of any Loan Document that can be construed in a manner consistent with any applicable law. If any provision of this Security Instrument shall grant to Lender (including Lender acting as a mortgagee-in-possession), Trustee or a receiver appointed pursuant to the provisions of this Security Instrument any powers, rights or remedies prior to, upon, during the continuance of or following an Event of Default that are more limited than the powers, rights, or remedies that would otherwise be vested in such party under any applicable law in the absence of said provision, such party shall be vested with the powers, rights, and remedies granted in such applicable law to the full extent permitted by law.

**6.     Waiver of Statute of Limitations and Marshaling.**

To the extent permitted by applicable law, Borrower waives (a) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Mortgaged Property, (b) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the Indebtedness and marshaling in the event of foreclosure of the lien created by this Security Instrument, (c) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties, (d) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Security Instrument or to any action brought to enforce the Note or any other obligation secured by this Security Instrument, and (e) any rights, legal or equitable, to require marshaling of assets or to require foreclosure sales in a particular order, including any rights under California Civil Code Sections 2899 and 3433. Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided by this Security Instrument. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of the remedies provided by this Security Instrument.

**7.     Waiver of Redemption; Rights of Tenants.**

(a)     Borrower hereby covenants and agrees that it will not at any time apply for, insist upon, plead, avail itself, or in any manner claim or take any advantage of, any appraisement, stay, exemption or extension law

Loan No.:     *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

or any so-called "Moratorium Law" now or at any time hereafter enacted or in force in order to prevent or hinder the enforcement or foreclosure of this Security Instrument. Without limiting the foregoing:

(b)     Borrower for itself and all Persons who may claim by, through, or under Borrower, hereby expressly waives any so-called "Moratorium Law" and any and all rights of reinstatement and redemption, if any, under any order or decree of foreclosure of this Security Instrument, it being the intent hereof that any and all such "Moratorium Laws," and all rights of reinstatement and redemption of Borrower and of all other Persons claiming by, through, or under Borrower are and shall be deemed to be hereby waived to the fullest extent permitted by applicable law;

(c)     Borrower shall not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power or remedy herein or otherwise granted or delegated to Lender but will suffer and permit the execution of every such right, power and remedy as though no such law or laws had been made or enacted; and

(d)     if Borrower is a trust, Borrower represents that the provisions of this Section 7 (including the waiver of reinstatement and redemption rights) were made at the express direction of Borrower's beneficiaries and the persons having the power of direction over Borrower, and are made on behalf of the trust estate of Borrower and all beneficiaries of Borrower, as well as all other persons mentioned above.

(e)     Lender shall have the right to foreclose subject to the rights of any tenant or tenants of the Mortgaged Property having an interest in the Mortgaged Property prior to that of Lender. The failure to join any such tenant or tenants of the Mortgaged Property as party defendant or defendants in any such civil action or the failure of any decree of foreclosure and sale to foreclose their rights shall not be asserted by Borrower as a defense in any civil action instituted to collect the Indebtedness, or any part thereof or any deficiency remaining unpaid after foreclosure and sale of the Mortgaged Property, any statute or rule of law at any time existing to the contrary notwithstanding.

**8.     Notice.**

All notices under this Security Instrument shall be:

(a)     in writing, and shall be delivered, in person, mailed, postage prepaid, either by registered or certified delivery, return receipt requested, or sent by overnight express courier;

(b)     addressed to the intended recipient at its respective address set forth on Page 1 of this Security Instrument; and

(c)     deemed given on the earlier to occur of:

(1)     the date when the notice is received by the addressee; or

(2)     if the recipient refuses or rejects delivery, the date on which the notice is so refused or rejected, as conclusively established by the records of the United States Postal Service or such express courier service.

(d)     Any party to this Security Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with this Section 8.

(e)     Any required notice under this Security Instrument which does not specify how notices are to be given shall be given in accordance with this Section 8.

**9.     Mortgagee-in-Possession.**

Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred in this Security Instrument shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

*Loan No.:*           *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

**10.    Release.**

Upon payment in full of the Indebtedness, Lender shall cause the release of this Security Instrument and Borrower shall pay Lender's costs incurred in connection with such release.

**11.    Substitute Trustee.**

In accordance with applicable law, Lender, at Lender's option, may from time to time, by a written instrument, appoint a successor trustee, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the Mortgaged Property is situated, shall be conclusive proof of proper substitution of the successor trustee. The successor trustee shall, without conveyance of the Mortgaged Property, succeed to all the title, power and duties conferred upon the Trustee in this Security Instrument and by the law of the Property Jurisdiction.

**12.    Transfer or Encumbrance of Mortgaged Property.**

If all, or any part, of the Mortgaged Property, or any interest therein, is sold, conveyed, alienated, transferred or encumbered (or if a beneficial interest in Borrower is sold, transferred or encumbered and Borrower is not a natural person), whether voluntary or involuntarily, without Lender's prior written consent, which Lender may withhold in its sole and absolute discretion, Lender shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any Note evidencing the same, immediately due and payable. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 10 days from the date the notice is delivered or mailed within which borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**13.    Books and Records.**

Borrower shall keep adequate books and records of account and furnish Lender with financial statements prepared by a certified public accountant reasonably acceptable to Lender, and other information concerning the affairs of Borrower as Lender may reasonably request, in form and detail reasonably satisfactory to Lender, including, annual statements of income and expense related to the operation of the Mortgaged Property (including a current rent roll, gross rental income, other income, real estate taxes, insurance, operating expenses and depreciation), a copy of Borrower's federal income tax return (including all supporting schedules) within 90 days after the end of each fiscal year, and from time to time, interim financial statements and other information as reasonably requested by Lender. All such financial statements, and other information shall be certified to be true and accurate by an individual responsible for the financial affairs of Borrower, in such individual's individual capacity. In the event that such financial statements and other information are not furnished to Lender by Borrower, or, if furnished, are not in a form reasonably acceptable to Lender, Lender may, in addition to any other remedies which Lender has under this Security Instrument, the Note, or any of the Other Security Documents, audit the books and records of Borrower, and any expense of the audit shall be added to the Debt. Immediately upon the appointment of a receiver of the Mortgaged Property by a court of competent jurisdiction, Borrower shall deliver all books and records or other documents required to be maintained under the terms of this section to such receiver.

**14.    California State Specific Provisions.**

(a)    In addition to the provisions of the Loan Agreement, Borrower further agrees that, if Lender accepts a guaranty of only a portion of the Indebtedness, Borrower waives its right under California Civil Code Section 2822(a) to designate the portion of the Indebtedness which shall be satisfied by a guarantor's partial payment.

(b)    Except for matters covered by an O&M Plan or matters described in the Environmental Indemnity Agreement, Borrower shall not cause or permit any lien (whether or not such lien has priority over the lien created by this Security Instrument) upon the Mortgaged Property imposed pursuant to any Environmental Laws. Any



such lien shall be considered a Prohibited Activity or Condition (as contemplated in the Environmental Indemnity Agreement).

(c)    Borrower represents and warrants to Lender that, except as previously disclosed by Borrower to Lender in writing, at the time of acquiring the Mortgaged Property, Borrower undertook all appropriate inquiry into the previous ownership and uses of the Mortgaged Property consistent with good commercial or customary practice and no evidence or indication came to light which would suggest that the Mortgaged Property has been or is now being used for any Prohibited Activities or Conditions (as defined in the Environmental Indemnity Agreement).

The representations and warranties in this Agreement shall be continuing representations and warranties that shall be deemed to be made by Borrower throughout the term of Mortgage Loan, until the Indebtedness has been paid in full.

(d)    Without limiting any of the remedies provided in this Security Instrument, Borrower acknowledges and agrees that each of the provisions in this Section 14 is an environmental provision (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Borrower relating to the real property security (the "Environmental Provisions"), and that to the extent applicable, Borrower's failure to comply with any of the Environmental Provisions will be a breach of contract that will entitle Lender to pursue the remedies provided by Section 736 of the California Code of Civil Procedure for the recovery of damages and for the enforcement of the Environmental Provisions.

**15.    Governing Law; Consent to Jurisdiction and Venue.**

This Security Instrument shall be governed by the laws of the Property Jurisdiction without giving effect to any choice of law provisions thereof that would result in the application of the laws of another jurisdiction. Borrower agrees that any controversy arising under or in relation to this Security Instrument shall be litigated exclusively in the Property Jurisdiction.    Subject to any contrary provision in any Commercial Arbitration Agreement, the state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies that arise under or in relation to any security for the Indebtedness. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

**16.    Miscellaneous Provisions.**

(a)    This Security Instrument shall bind, and the rights granted by this Security Instrument shall benefit, the successors and assigns of Lender.    This Security Instrument shall bind, and the obligations granted by this Security Instrument shall inure to, any permitted successors and assigns of Borrower under the Loan Agreement.  If more than one (1) person or entity signs this Security Instrument as Borrower, the obligations of such persons and entities shall be joint and several.  The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Security Instrument shall create any other relationship between Lender and Borrower.  No creditor of any party to this Security Instrument and no other person shall be a third party beneficiary of this Security Instrument or any other Loan Document.

(b)    The invalidity or unenforceability of any provision of this Security Instrument or any other Loan Document shall not affect the validity or enforceability of any other provision of this Security Instrument or of any other Loan Document, all of which shall remain in full force and effect.  This Security Instrument contains the complete and entire agreement among the parties as to the matters covered, rights granted and the obligations assumed in this Security Instrument.  This Security Instrument may not be amended or modified except by written agreement signed by the parties hereto.

(c)    The following rules of construction shall apply to this Security Instrument:

(1)    The captions and headings of the sections of this Security Instrument are for convenience only and shall be disregarded in construing this Security Instrument.

Loan No.: ▮▮▮▮▮  *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

(2)  Any reference in this Security Instrument to an "Exhibit" or "Schedule" or a "Section" or an "Article" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an exhibit or schedule attached to this Security Instrument or to a Section or Article of this Security Instrument.

(3)  Any reference in this Security Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.

(4)  Use of the singular in this Security Instrument includes the plural and use of the plural includes the singular.

(5)  As used in this Security Instrument, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation.

(6)  Whenever Borrower's knowledge is implicated in this Security Instrument or the phrase "to Borrower's knowledge" or a similar phrase is used in this Security Instrument, Borrower's knowledge or such phrase(s) shall be interpreted to mean to the best of Borrower's knowledge after reasonable and diligent inquiry and investigation.

(7)  Unless otherwise provided in this Security Instrument, if Lender's approval, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, designation, determination, selection, estimate, action or decision shall be made in Lender's sole and absolute discretion.

(8)  All references in this Security Instrument to a separate instrument or agreement shall include such instrument or agreement as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(9)  "Lender may" shall mean at Lender's discretion, but shall not be an obligation.

**17.  Time is of the Essence.**

Borrower agrees that, with respect to each and every obligation and covenant contained in this Security Instrument and the other Loan Documents, time is of the essence.

**18.  WAIVER OF TRIAL BY JURY.**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER AND LENDER (BY ITS ACCEPTANCE HEREOF) (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS SECURITY INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH OF BORROWER AND LENDER, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

**19.  Insurance.**

Borrower, at its sole cost and expense, will maintain or cause to be maintained the following (the "Policies):

(a)  Commercial general liability (including contractual liability) insurance ("CGL Insurance") covering any and all liability of the insured arising out of the ownership, maintenance, use or occupancy of the Mortgaged Property, and all operations incidental thereto said insurance to have limits of not less than One Million Dollars ($1,000,000.00) combined single limit per occurrence for bodily injury, personal injury and property damage liability;

(b)  Insurance ("Building Insurance") on all buildings, fixtures and improvements located on the Mortgaged Property against "special perils" (including "ordinance or law coverage"), in amounts at least equal to

the greater of: (x) the full replacement cost thereof (without deduction for depreciation) as such replacement cost shall be determined from time to time at the reasonable request of Lender; or (y) unless prohibited by law, the unpaid principal amount of the Debt. The Building Insurance shall include a co-insurance waiver or agreed amount endorsement. Such insurance shall, during the course of any construction of additions to the Improvements, be on Special Form Builder's Risk 100% Completed Value Non-Reporting Form or other form approved by Lender;

(c)        Insurance on personal property against fire and any peril generally included within the classification of "extended coverage" ("Personal Property Insurance") in amounts at least equal to the replacement value thereof;

(d)        If and whenever Borrower shall have employees, workers' compensation insurance as required by law and employer's liability insurance with limits of liability of not less than $100,000/$500,000/$100,000;

(e)        If the Mortgaged Property is located in an area which has been identified by the Secretary of Housing and Urban Development as a flood hazard area and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (the "Act"), Borrower shall keep the Mortgaged Property covered by flood insurance ("Flood Insurance") up to the maximum limit of coverage available under the Act, but not in excess of the amount of the Debt; and

(f)        Such other insurance with respect to the Mortgaged Property in such amounts and against such insurable hazards as Lender from time to time may reasonably require ("Additionally Required Insurance").

All insurance required hereunder, including the CGL Insurance (the "Policies"), shall provide that coverage shall not be revised, cancelled or reduced until at least thirty (30) days' written notice of such revision, cancellation or reduction shall have been given to Lender; be issued by insurance companies which are qualified to do business in the State, which have at least one of the following A.M. Best Co. combinations of Best's Rating and Best Financial Size Category: A-, XV; A, XIII; A+, IX; or A++, VIII; and which are satisfactory to Lender in all other ways.

The CGL Insurance shall name Lender as an additional insured; apply severally as to Borrower and Lender (excepting the limits of liability); cover each of them as insureds in the same manner as if separate policies had been issued to each of them (excepting the limits of liability); contain no provisions affecting any rights which any of them would have as claimants if not so named as insureds; and be primary insurance with any other valid and collectible insurance available to Lender constituting excess insurance.

The Building Insurance, Personal Property Insurance and Flood Insurance shall name Lender as an additional insured; and have attached to them a Lender's Loss Payable Endorsement naming Lender as Lender, a standard waiver of subrogation endorsement, a stipulated amount endorsement, and a full replacement cost endorsement.

(g)        Borrower will deliver to Lender original binders or evidence of all required insurance to Lender and Borrower shall promptly furnish to Lender copies of all renewal notices and all receipts of paid premiums received by it. At least thirty (30) days prior to the expiration date of a required policy, Borrower shall deliver to Lender a renewal binder or evidence of insurance in a form satisfactory to Lender.

(h)        If the Mortgaged Property is sold at a Foreclosure Event or if Lender shall acquire title to the Mortgaged Property, Lender shall have all of the rights of Borrower to the Policies and the unearned premiums on them and to the proceeds resulting from any damage to Mortgaged Property prior to such sale or acquisition.

(i)        If any part of the Mortgaged Property is damaged or destroyed by fire or other casualty, Borrower will promptly give written notice thereof to the insurance carrier and Lender, and will not adjust any damage or loss which exceeds $50,000 unless Lender joins in such adjustment; but if there has been no adjustment of any such damage or loss within four months from the date of occurrence and if an Event of Default exists at the end of such four-month period or at any time thereafter, Lender may alone make proof of loss, adjust and compromise any claim under the policies and appear in and prosecute any action arising from such policies. In connection

Loan No.:     *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

therewith, Borrower does hereby irrevocably authorize, empower and appoint Lender as attorney-in-fact for Borrower (which appointment is coupled with an interest) to do any of the above in the name of Borrower.

(j)     All sums in excess of $50,000 paid under any insurance policies relating to the Building Insurance, Personal Property Insurance, Flood Insurance or Additionally Required Insurance (collectively the "Proceeds"), shall be paid to Lender which may, at its option (but subject to the provisions of this Paragraph), apply them, after first deducting Lender's expenses incurred in the collection thereof, to the payment of the Debt, whether or not due and in such order of application as Lender may determine, or to the repair, replacement, rebuilding or restoration of the Mortgaged Property, in such manner as Lender may determine. However, Lender shall make all Proceeds (after first deducting therefrom Lender's reasonable expenses incurred in collecting them) available to Borrower to reimburse Borrower for Borrower's reasonable costs of restoration, repair, replacement or rebuilding of the Improvements, Goods and Fixtures in accordance with procedures reasonably required by Lender (and shall not be applied toward the payment of the Debt until after restoration and repair of the Improvements) provided:

(1)     There is no Event of Default;

(2)     Borrower has notified Lender of Borrower's intention to perform such restoration or repair within thirty (30) days after adjusting the loss or casualty;

(3)     Lender receives reasonably satisfactory evidence that the Premises and Equipment have been fully restored or that by application of the Proceeds will be fully restored to their condition prior to the damage or destruction, free and clear of all liens other than the Permitted Encumbrances;

(4)     If, in the reasonable judgment of Lender, the Proceeds will be insufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction, Borrower shall demonstrate to Lender the availability of funds which, together with the Proceeds, are sufficient to restore the Improvements to their condition prior to the damage or destruction; and

(5)     There will, in the reasonable judgment of Lender, remain sufficient time to complete the restoration or repair of the Improvements, Goods and Fixtures prior to the Date of Maturity (as defined in the Note).

Any Proceeds remaining after reimbursement of Borrower for its costs of restoring the Improvements, Goods and Fixtures at Lender's option, may be applied to partial prepayment of the Debt. Any such application of the Proceeds to the payment of the Debt shall be without prepayment premium or penalty, if any, otherwise applicable and shall not extend or postpone the due dates of the monthly installments under the Note or change the amount of such installments. Any remaining proceeds not applied to the Indebtedness shall be paid to Borrower.

**20.    Majority Action.**

If there is more than one Lender of this Security Instrument, then the Lenders holding more than 50% of the recorded beneficial interests of this Security Instrument may govern the actions to be taken on behalf of all Lenders in accordance with California Civil Code Section 2941.9 in the Event of Default or foreclosure for matters that require direction or approval of the Lenders, including: i) designation of the broker, servicing agent, and/or other person acting on behalf of the Lenders; and ii) the sale, encumbrance, or lease of the Mortgaged Property owned by the Lenders resulting from a Foreclosure Event or receipt of the Security Instrument in lieu of foreclosure (collectively, "Lender Actions"). If a Department of Real Estate ("DRE") licensed real estate broker(s) (collectively, "Broker"), or affiliate of Broker, invests in a portion of the Note secured by Security Instrument and is the issuer or servicer of the corresponding Loan, then that Broker is excluded from voting on Lender Actions with respect to the percentage of such Broker's investment in the Loan. For purposes of this paragraph, "affiliate of the Broker" includes any person as defined in Section 25013 of the Corporations Code who is controlled by, or is under common control with, or who controls, the Broker. "Control" means the possession, direct or indirect, of the power to direct or cause the direction of management and policies.

Loan No.: ███████          *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

### 21.   Right to Refinance Senior Lien in Default.

If any lien that is senior to this Security Instrument is in default and such default is not cured within 30 days, Lender shall have the right, without notice to Borrower, to advance to such senior lienholder the entire amount owed to it and to add the advance to the unpaid principal balance of this Note secured by this Security Instrument.  In addition, Borrower shall pay an advance fee of 2% of the entire amount advanced to such senior lienholder, paid to Lender, which Lender may add to the unpaid principal balance of this Note secured by this Security Instrument.

*(signatures follow on next page)*

Loan No.: ███████        *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

**IN WITNESS WHEREOF,** Borrower has signed and delivered this Security Instrument or has caused this Security Instrument to be signed and delivered by its duly authorized representative.

**BORROWER: Kristina L. Fluetsch**

By: _____

Name: Kristina L. Fluetsch

Loan No.: ███████  First Property Address: 2722 Latham Drive, Sacramento, CA 95864

> *A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

STATE OF CALIFORNIA )
) ss.
COUNTY OF *Sacramento* )

On *12·15·2022* before me, *Nicole Caviness*, Notary Public, personally appeared **Kristina L. Fluetsch**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

NICOLE CAVINESS
Notary Public - California
Sacramento County
Commission # 2395620
My Comm. Expires Mar 29, 2026

 Loan No.: ▌     First Property Address: 2722 Latham Drive, Sacramento, CA 95864

## EXHIBIT "A"

### APN(s) of Collateral Real Property:

293-0070-030-0000

### Street Address of Collateral Real Property:

2722 Latham Drive, Sacramento, CA 95864

### [Legal Description]

Lot 6, as shown on the "Plat of Sierra Oaks Unit No. 20", in the City of Sacramento, County of Sacramento, State of California, filed in Book 189 of Maps, Map No. 1, in the Office of the County Recorder of said County.

Excepting therefrom the following described Parcel:

All that portion of Lot 6, as shown on the "Plat of Sierra Oaks Unit No. 20", filed in the office of the County Recorder of Sacramento County, California, in Book 189 of Maps, Map No. 1 described as follows:

Beginning at the Southeast corner of Lot 1, as shown on the "Plat of Sierra Oaks Unit No. 14", Recorded August 24, 1967, in Book 81 of Maps, Map No. 9, Records of said County; thence along the Southerly boundary and the Westerly prolongation thereof of said Lot 1, North 74 Degrees 42 minutes 24 seconds West 95.02 feet; thence parallel with the boundary of said Lot 1, South 14 degrees 02 minutes 20 seconds West 50.01 feet; thence parallel to the Southerly boundary of said Lot 1, South 74 degrees 42 minutes 24 seconds East 95.02 feet to the Easterly boundary of said Lot 6; thence along the Easterly boundary of said Lot 6, North 14 degrees 02 miutes 20 seconds East 50.01 feet to the point of beginning.

The above description is pursuant to the document entitled "Certificate of Compliance for Lot Line Adjustment", recorded on January 19, 1993 in Book 930119, Page 533, of Official Records of said County.

*Loan No.:*      *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

## EXHIBIT "B"

### LENDER LISTING
### as tenants in common

| Lender Name | Fractional Ownership As Tenants in Common |
|---|---|
| Michael Gorenberg, an unmarried man | $200,000.00/$690,000.00ths |
| Barry L. Chin and Susan Y. Chin, Trustees, or their successors in trust, under the Chin Living Trust, dated April 13, 2001, and any amendments thereto | $150,000.00/$690,000.00ths |
| Tuyen V. Quoc and Myung S. Lee, Trustees of the Quoc-Lee Family Trust U/D/T dated March 31, 1999 | $150,000.00/$690,000.00ths |
| Siva Uppalapati and Padma Uppalapati, as CO-Trustees of the Uppasana22 Family Trust, U/A dated November 8, 2022 | $140,000.00/$690,000.00ths |
| Chin-Chai Low and Lai-Fen Wong, Trustees of the Low/ Wong Family Trust dated September 9, 1999, and any amendments thereto | $50,000.00/$690,000.00ths |

EXHIBIT 3

# fluetsch & fluetsch
ATTORNEYS AT LAW

November 28, 2022

To Whom it May concern.

The purpose of the business
loan is to start a new
law firm. I intend to have
the second firm up and
running by Jan. 1, 2023.

Thank you.

Kristina L. Fluetsch
SBN 169233

2443 Fair Oaks Blvd. • Suite 499 • Sacramento • Ca • 95825-7684
115 W. Walnut St. • Suite 3 • Lodi • Ca • 95240
Tel. (209) 367-8888 • Fax (916) 664-3115 • Email: kfluetsch@me.com

EXHIBIT 4

Loan No.: ████████        *First Property Address: 2722 Latham Drive, Sacramento, CA 95864*

## CERTIFICATE OF BUSINESS PURPOSE OF LOAN

| | |
|---|---|
| **Loan No.:** | ████████ |
| **Dated:** | 12/14/2022 |
| **Lender:** | See Exhibit "B" (collectively, the "**Lender**") |
| **Borrower:** | Kristina L. Fluetsch (the "**Borrower**") |
| **Property Address:** | 2722 Latham Drive, Sacramento, CA 95864 (collectively, the "**Property**") |

Borrower certifies to **See Exhibit "B"** (the "**Lender**") as follows:

    **1.**    I (or an entity I control) have applied to Lender for a real estate secured loan of $690,000.00 secured by the real property at 2722 Latham Drive, Sacramento, CA 95864 (the "**Loan**").

    **2.**    Lender has stressed to me the <u>importance</u> of knowing the primary purpose of the Loan. I know that the legal responsibilities of Lender vary considerably depending upon whether the Loan is a consumer loan (for personal, household or family purposes), or a business loan.

    **3.**    I have <u>represented</u> to Lender and again <u>represent</u> to Lender that <u>all</u> of the purposes of the Loan, exclusive of commissions and loan expenses incurred to obtain the Loan are *(to be completed by Borrower)*:

|  | <u>Purpose</u> | <u>Approximate Amount</u> |
|---|---|---|
| A. | | $564,636.12 *estimate* |
| B. | OPEN UP a SECOND BRANCH /OFFICE OF LAW FIRM | |

    **4.**    The <u>primary</u> purpose of the Loan is to finance the business enterprise known as FLUETSCH + FLUETSCH that is in the business of LAW FIRM .

    **5.**    <u>No</u> part of the Loan proceeds are intended to be used for a nonbusiness (i.e., consumer) purpose except *(to be completed by Borrower)*:

| <u>Purpose</u> | <u>Approximate Amount</u> |
|---|---|
| n/a | n/a |

    **6.**    The lender, broker, assignees and successors of the Lender may rely upon this certificate. I declare under penalty of perjury under the laws of the State of California that the foregoing Certificate is true and correct.

**BORROWER: Kristina L. Fluetsch**

By: _____

    Name: Kristina L. Fluetsch